Julie R. Trotter, Bar No. 209675
Shirin Forootan, Bar No. 260390
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:  (949) 717-3000
Fax:  (949) 717-3100
jtrotter@calljensen.com
sforootan@calljensen.com

Attorneys for Defendant Kohl's Department Stores, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JAMIE STOFFEL,<br><br>Plaintiff,<br><br>vs.<br><br>KOHL'S DEPARTMENT STORES, INC., a Delaware corporation; and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.  5:17-cv-2168 R (KKx)<br><br>Assigned for All Purposes To:<br>Judge Manuel L. Real<br>Dept. 880<br><br>**DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Date:  July 16, 2018<br>Time:  10:00 a.m.<br>Dept:  880<br><br>Complaint Filed:  August 24, 2017<br>Trial Date:       August 28, 2018 |

KOH01-61:2225877 2:6-18-18

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................... 2

  A.   Throughout Plaintiff's Employment She Understood and
       Enforced Kohl's Policies, Including Those Prohibiting
       Discrimination and Retaliation, and Providing Meal Periods ...................... 2

  B.   Plaintiff Was Responsible for the Overall Performance of
       the Shoe Department ............................................................................... 3

  C.   Plaintiff Allegedly Suffered a Workplace Injury in the Fall
       of 2014, Provided Work Restrictions to Management
       Beginning in May 2015, and Was Able to Delegate All
       Tasks She Could Not Perform Due to Her Restrictions ............................ 5

  D.   Plaintiff Had Documented Performance Problems Prior to
       Her Injury and Request for Accommodation .......................................... 6

  E.   Plaintiff Continued to Have Performance Problems in 2015 ...................... 7

  F.   After Numerous Documented Performance Issues, Plaintiff
       Complained to Kohl's Integrity Hotline About Pickron ............................ 8

  G.   Plaintiff's Mismanagement of the Shoe Department
       Continued Throughout 2016, Causing Kohl's to Issue
       Progressive Counseling and Ultimately Terminate Plaintiff's
       Employment ........................................................................................... 9

  H.   Plaintiff's DFEH and Civil Complaint ................................................... 13

III. LEGAL STANDARD ............................................................................. 13

IV.  LEGAL ARGUMENT ............................................................................. 14

  A.   Plaintiff's First, Second, Third and Eighth Causes of Action
       Fail as a Matter of Law Because She Cannot Offer Any
       Evidence That Her Termination Was Linked to Her
       Disability, Her Complaints, and/or her Requests for
       Accommodation .................................................................................... 14

       1.   Plaintiff cannot establish a prima facie case to support
            her first cause of action for disability discrimination. ....................... 14

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

**TABLE OF CONTENTS (cont'd)**

Page

      2.     Plaintiff cannot establish a prima facie case for her second and third causes of action for retaliation and eighth cause of action for whistleblowing under Labor Code section 1102. ........................................................ 16

B.    Plaintiff's First, Second, Third and Eighth Causes of Action Fail Because Kohl's Had a Legitimate Non-discriminatory Reason for the Adverse Employment Actions ............................................... 17

C.    Plaintiff's Fourth Cause of Action for Failure to Prevent Discrimination and Retaliation Fails as a Matter of Law ............................ 19

D.    Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law ...................................................................................................... 20

E.    Plaintiff's Fifth Cause of Action for Failure to Engage in the Interactive Process Fails a Matter of Law ..................................................... 21

F.    Plaintiff's Meal Period Claim Fails as a Matter of Law .............................. 22

G.    All of Plaintiff's Claims (Except the Meal Break Claim) Are Barred Under the Workers' Compensation Act Because All of the Alleged Conduct Occurred in the Course and Scope of Plaintiff's Employment ...................................................................... 24

H.    Plaintiff's Punitive Damages Claim Fails as a Matter of Law ..................... 24

V.    CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

Page

Federal Cases

*Alamillo v. BNSF Railway Company,*
    869 F.3d 916 (9th Cir. 2017) ...................................................................... 14

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................ 13, 14

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................ 13, 14

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973) ...................................................................... 14, 17, 18

*McKenzie v. San Joaquin Valley College, Inc.,*
    2017 WL 2129685 (2017) .............................................................................. 17

*Ortiz v. Georgia Pacific,*
    973 F. Supp. 2d 1162 (E.D. Cal. Sept. 23, 2013) ........................................ 19

*Phillips v. Victor Comm. Servs., Inc.,*
    629 Fed. Appx. 920 (9th Cir. 2017) .............................................................. 16

*Reeves v. Sanderson Plumbing Prods., Inc.,*
    530 U.S. 133 (2000) ....................................................................................... 18

*Smith v. Harrington,*
    2015 WL 1407292 (N.D. Cal. Mar. 27, 2015) .............................................. 15

KOH01-61:2225877  2:6-18-18                          - iii -

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

# TABLE OF AUTHORITIES (cont'd)

Page

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)................................................................................19

*Vollmar v. Int'l Bus. Machines Corp.*,
  2012 WL 3731512 (N.D. Cal. Aug. 28, 2012)......................................15

*Wilson v. Sunsweet Grocers, Inc.*,
  2007 WL 2418736 n.5 (E.D. Cal. Aug. 24, 2007) ...............................22

State Cases

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
  96 Cal. App. 4th 1017 (2002)..........................................................24, 25

*Brinker Restaurant Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012)..................................................................22, 23

*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*,
  24 Cal. 4th 800 (2001)..........................................................................24

*Chen v. County of Orange*,
  96 Cal. App. 4th 926 (2002) ................................................................16

*Cole v. Fair Oaks Fire Protection Dist.*,
  43 Cal. 3d 148 (1987)...........................................................................24

*College Hosp., Inc. v. Superior Court*,
  8 Cal. 4th 704 (1994)............................................................................25

*Guthrey v. State of Cal.*,
  63 Cal. App. 4th 1108 (1998)...............................................................16

CALL&
JENSEN

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

# TABLE OF AUTHORITIES (cont'd)

Page

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000) ................................................................. 15, 18

*Hanson v. Lucky Stores, Inc.*,
74 Cal. App. 4th 215 (1999) ........................................................ 14, 19

*Harris v. City of Santa Monica*,
56 Cal. 4th 203 (2013) ................................................................. 14, 16

*Hersant v. Department of Social Services*,
57 Cal. App. 4th 997 (1997) .............................................................. 19

*Horn v. Cushman & Wakefield Western, Inc.*,
72 Cal. App. 4th 798 (1999) .............................................................. 15

*Jensen v. Wells Fargo Bank*,
85 Cal. App. 4th 245 (2000) ........................................................ 20, 22

*McRae v. Dep't of Corrections & Rehab.*,
142 Cal. App. 4th 377 (2006) ............................................................ 19

*Morgan v. Regents of Univ. of Cal.*,
88 Cal. App. 4th 52 (2000) ................................................................ 16

*Murphy v. Kenneth Cole Productions, Inc.*,
40 Cal. 4th 1094 (2012) .................................................................... 22

*Pichon v. Pacific Gas & Electric Co.*,
212 Cal. App. 3d 488 (1989) ............................................................. 24

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

CALL & JENSEN

# TABLE OF AUTHORITIES (cont'd)

Page

*Raine v. City of Burbank,*

    135 Cal. App. 4th 1215 (2006) ...................................................................21

*Scotch v. Art Inst. of Cal.,*

    173 Cal. App. 4th 986 (2009) .....................................................................18

*Shoemaker v. Myers,*

    52 Cal. 3d 1 (1990) .....................................................................................24

*Thompson v. City of Monrovia,*

    186 Cal. App. 4th 860 (2010) .............................................................19, 21

*White v. Ultramar, Inc.,*

    21 Cal. 4th 563 (1999) ................................................................................25

*Wills v. Superior Court,*

    195 Cal. App. 4th 143 (2011) .....................................................................14

### State Statutes

Cal. Civ. Code § 3294 ......................................................................................25

Cal. Gov. Code § 12940(h) ..............................................................................16

Cal. Gov. Code § 12960 ...................................................................................21

Cal. Gov. Code § 12960(d) ..............................................................................21

Cal. Gov. Code § 12965(b) ..............................................................................21

Labor Code § 1102 ......................................................................................ii, 16

# TABLE OF AUTHORITIES (cont'd)

<u>Page</u>

Labor Code § 1102.5.........................................................................16, 17

Labor Code § 3600.............................................................................24

Federal Rules

Fed. R. Civ. P. 56(b) ..........................................................................13

Fed. R. Civ. P. 56(c)...........................................................................13

Fed. R. Civ. P. 56(e)...........................................................................13

State Regulations

2 C.C.R. 11009(c) ..............................................................................18

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case arises from Plaintiff's employment as a supervisor in the shoe department at the Kohl's store in South Corona.   Kohl's terminated Plaintiff's employment for poor performance in November 2016.  Ignoring mounds of evidence of her performance issues, Plaintiff believes that both the store manager and operations manager had it out for her ever since she suffered a shoulder injury and requested an accommodation.  On this shaky foundation, Plaintiff attempts to construct nine separate causes of action.  The problem with her theory, and each of her claims, is that they lack any factual basis and amount to nothing more than speculation.   Indeed, Plaintiff admitted at her deposition that she had nothing to go on other than her gut to support her claims:

> Q:   Can you give me any reason or basis for that belief other than just maybe, like, your gut feeling?
>
> A:   No.  Because I think they just wanted to terminate me.[1]

Contrary to Plaintiff's gut feeling, the undisputed evidence establishes that Plaintiff's progressive counseling and termination were long in the works – well before her shoulder injury or any protected activity.  In fact, in Plaintiff's own words the shoe department was "out of control" under her leadership.  At Plaintiff's deposition she conceded her mismanagement of the shoe department as well as the performance problems specifically identified in each and every written warning and counseling she received in advance of her termination.   Against, this backdrop, Plaintiff cannot establish a prima facie case for disability discrimination or retaliation and cannot refute Kohl's legitimate business reasons for the termination of her employment.   Thus,

---

[1] Plf. Depo. 182:8-17, attached as Exhibit A to the Declaration of Julie R. Trotter filed concurrently herewith (as are all pages of Plaintiff's deposition transcript and exhibits thereto cited herein).

CALL & JENSEN

Plaintiff's first, second, third, fourth, eighth and ninth causes of action should be summarily adjudicated in Kohl's favor.

Plaintiff's remaining causes of action fare no better.  Her fifth cause of action for failure to accommodate fails because Plaintiff cannot identify a single accommodation request that was denied and because she testified that she knew, as a supervisor, she could delegate work outside her restrictions to others.  Moreover, both her fifth and her sixth cause of action (failure to engage in the interactive process) are outside the applicable statute of limitations as she testified specifically she had no issues with being accommodated after May 2016 but waited for over a year to file a charge with the DFEH.  Further, Plaintiff's first through sixth and her eighth and ninth causes of action are all barred by the doctrine of workers' compensation exclusivity as they are all based on conduct within the course and scope of normal employment.  Plaintiff's seventh cause of action for failure to provide meal periods fails because the undisputed evidence establishes that Kohl's met its legal requirement to provide meal periods and Plaintiff lacks any evidence to the contrary.  Finally, Kohl's requests that the Court summarily adjudicate the issue of punitive damages in its favor because Plaintiff cannot establish that a managing agent authorized her termination (or any adverse consequence) and she cannot prove conduct that rises to the level of despicability necessary for the imposition of punitive damages.

Because all of Plaintiff's claims fail as a matter of law, this Court should grant summary judgment.

## II.   FACTUAL BACKGROUND

### A. Throughout Plaintiff's Employment She Understood and Enforced Kohl's Policies, Including Those Prohibiting Discrimination and Retaliation, and Providing Meal Periods



DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Plaintiff began her employment in 2003 as an at-will employee. (UF ¶ 1.)[2] Thereafter, Plaintiff received a company handbook which contained information about Kohl's open door policy, a phone number to call the integrity hotline, Equal Employment Opportunity Policy, Americans with Disabilities Policy, and No Retaliation Policy. (UF ¶ 53.) Plaintiff understood that the handbook and company policies applied to her, including Kohl's whistleblower protection policy. (UF ¶ 54.) Both of Plaintiffs supervisors during the relevant time period—Leslie Pickron (Operations Manager) and Cindy Delatorre (Store Manager)—received ethics training, which includes anti-discrimination and anti-retaliation training. (UF ¶ 56.) In or about 2010, Plaintiff was promoted to supervisor of the shoe department. (UF ¶ 3.) Plaintiff acknowledged that, as a supervisor, she was responsible for communicating and enforcing all company policies. (UF ¶ 4.) Plaintiff understood it was Kohl's policy to provide thirty-minute meal periods before the end of the fifth hour of work. (UF ¶ 136.) As supervisor, Plaintiff enforced this policy upon her subordinate employees. (*Id.*) Plaintiff understood that management expected her to start her meal period between 4 and 4 ½ hours after the start of her shift to ensure her meal period was taken before the end of the fifth hour of work. (UF ¶ 137.)

## B. Plaintiff Was Responsible for the Overall Performance of the Shoe Department

As supervisor of the shoe department, Plaintiff was responsible for overseeing the department, running her team, and making sure all tasks were completed according to Kohl's standards. (UF ¶¶ 4, 7.) Although Plaintiff did and was expected to delegate tasks to her subordinate employees, as the supervisor she was ultimately responsible for the cleanliness and overall performance of the shoe department. (UF ¶¶ 4-5.) Plaintiff's job description, which she acknowledged during her employment, lays out

---

[2] References to "UF" herein are to Defendant's Statement of Uncontroverted Facts, filed concurrently herewith.

CALL &
JENSEN

the primary job duties of a supervisor which include directing workflow to sales associates, greeting and offering assistance to customers, upholding company standards, and orienting and training new sales associates.  (UF ¶ 7.)

In particular, Plaintiff was expected to enforce certain policies specific to Kohl's shoe department and testified that she understood and was very familiar with them: "Yes, We Can" policy, which means say yes to customers (and not no); "2 in a Line" policy, which means if there are two customers in line to check out, then other employees have to assist the employees working the cash registers; "Mismate Shoes" policy, which describes the process of mating (*i.e.*, matching) a single shoe that is found alone or paired incorrectly with another shoe so that it is available for a customer to purchase; part of this process involves keeping the list of unpaired shoes low, as tracked by electronic tags called "ESLs", and the appropriate length of an ESL list is about 10-20; "Merchandise and Visual Standards" policy – describes the process by which shoe merchandise must be displayed for customers; "GREAT" policy, which stands for greet customer, request credit, explain email, ask survey, and thank customer when at cash registers; Kohl's Charge applications policy, which describes the expectation that Plaintiff must solicit, open, and activate Kohl's charge applications and motivate others to do the same; Communication policy, which required her to have her walkie-talkie with her and turned on while working, for her to promptly respond when called, and if she was with a customer she should promptly answer and say she is with a customer; and "5 Basics" policy, which describes the process by which the following must take place in the shoe department: replenishment (*i.e.*, moving merchandise from the stockroom to the sales floor where it can be purchased), signing, sizing, clearance, and clean store. (UF ¶¶ 8-15.)

/ / /

/ / /

- 4 -

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

### C. Plaintiff Allegedly Suffered a Workplace Injury in the Fall of 2014, Provided Work Restrictions to Management Beginning in May 2015, and Was Able to Delegate All Tasks She Could Not Perform Due to Her Restrictions

Plaintiff claims she suffered a workplace injury on October 12, 2014, involving her shoulder that was then exacerbated with additional injuries to her neck and shoulders on December 15, 2014. (UF ¶ 69.) Plaintiff provided five doctor's notes to management stemming from these events during the period May 2015 through March 2016. (UF ¶ 70.) All except the final doctor's note included the following restrictions: "no lifting, pushing or pulling greater than 10 pounds. No repetitive bending. No overhead work." (*Id.*) The final note dated March 10, 2016 said, "no lifting, pushing or pulling greater than 10 pounds." (*Id.* at Exh. 53.)

On two separate occasions, Cindy Delatorre, the Store Manager, met with Plaintiff to go over her work restrictions and her job description and identify which tasks Plaintiff could perform. (UF ¶ 80.) Plaintiff understood that as supervisor of the shoe department, it was her job to oversee the department, assign tasks, and direct workflow to associates. (UF ¶ 71.) She understood the instruction from management was that, as shoe department supervisor, she had to make sure the work gets done, but that she did not necessarily have to do it herself. (UF ¶ 72.) No one ever told her that she could not ask others for help with tasks that were outside her work restrictions or that she had to do those tasks herself. (UF ¶ 73.) Plaintiff testified she understood that she could, and on many occasions she did, delegate tasks that would exceed her work restrictions. (UF ¶ 74.)[3] Typically, Plaintiff had four or five subordinate employees that worked in her department on a staggered schedule (such as someone working the morning shift and someone working the closing shift and during the holidays there would be a "mid" shift). (UF ¶ 75.) Plaintiff would communicate with her subordinates

---

[3] Q: So your team could be the ones [sic] that could do the dusting and the freight and the moving the heavy stuff so that you wouldn't have to work outside your restrictions, then; right? A: They could have been and they were, too. (*Id.* at Plf. Depo. 162:18-22)

CALL & JENSEN

by leaving notes for them and assigning them tasks.  (UF ¶ 76.)  If Plaintiff did not or could not complete a task during her shift, she would leave it for the next person coming in.  (UF ¶ 77.)  In addition, sometimes associates from other departments were asked to assist the shoe department with tasks that needed to be completed.  (UF ¶ 78.)  For example, other associates would move fixtures for Plaintiff so that she would not violate her work restrictions.  (*Id*.)  To the extent that any work restrictions prevented Plaintiff from performing certain tasks in the stockroom, she understood she could have requested that a team member help her with that task. (UF ¶ 79.)  Plaintiff's own notes indicate that she knew she could, and in fact did, ask others to help her with tasks that may exceed her work restrictions.  (Plf. Depo. (Vol. 2) 61:13-21.)

### D. Plaintiff Had Documented Performance Problems Prior to Her Injury and Request for Accommodation

Well before Plaintiff allegedly suffered a workplace injury and needed any accommodation, there were multiple documented instances of her performance shortcomings.  In 2004 and 2005, for example, she received written counselings for absences and tardiness, including for "leaving shift without notifying location management (job abandonment)."  (UF ¶ 2.)  In 2011, she received a "does not meet expectations of the position" evaluation and was informed that she "isn't globally focused and often puts the needs of her department above the needs of the store and customer service.  She needs to develop her team skills to help the store succeed as a whole."  (UF ¶ 16.)  In 2013, Plaintiff was counseled at least two times by management about her failure to comply with the company's meal period policy.  (UF ¶ 17.)  In particular, she was disciplined for waiting to take lunch at the last minute, which impacts customers because she has to void transactions if she is in the middle of one at the same time when she has to break for lunch.  (*Id.*)  Most notably, Leslie Pickron issued Plaintiff's performance evaluation on August 12, 2014.  (UF ¶ 19.)  As part of that review, she received a "does not meet expectations of the position" with regard to

CALL&
JENSEN

credit (asking, opening, and activating Kohl's charge applications), was informed that she sometimes does not smile and say hi to customers, that there were too many shoes that were not electronically tagged, that she needs to try to keep mismates (unmatched shoes) low,[4] that she needs to work on her communication with the team and with management, and that she needs to push herself to empty her stockroom consistently (*i.e.*, replenishment).  (*Id.*)  Plaintiff testified that in approximately 2013 (well before her work place injury) her prior manager, Rudy Armendariz, cut down on overtime which she claims affected her ability to accomplish her job duties in the shoe department.  (UF ¶ 18.)

### E. Plaintiff Continued to Have Performance Problems in 2015

On June 30, 2015, Leslie Pickron reached out to Human Resources for guidance on how to handle Plaintiff's continued performance problems, particularly the fact that Plaintiff did not respond to management calls or work assignments, ignored peer requests for assistance, hung up the phone in the middle of a conversation with management, and would leave without checking in.  (UF ¶ 23.)  Human Resources advised Pickron to document the issues and to meet with Plaintiff to get her side of the story.  (UF ¶ 24.)  Human Resources also advised Pickron to remind Plaintiff that further insubordination would lead to disciplinary action.  (*Id.*)  On August 7, 2015, Pickron issued Plaintiff a performance evaluation which noted some of the issues, including that "[Plaintiff] could push herself to become more global – assisting customers in other areas without being asked," that she should "push for replenishment and continued focus on ESLs," and that "[Plaintiff] struggles with keeping her walkie-talkie on and she does not status with [managers] [upon arrival/departure]."  (UF ¶ 25.)  Pickron also noted that Plaintiff "does not meet expectations of the position" with regard to Kohl's credit program, which was part of her job.  (*Id.*)



---

[4] Plaintiff admitted the ESL list for mismate shoes under her supervision was longer than what Company standards allowed.  (UF ¶ 20.)

On August 12, 2015, Pickron again contacted Human Resources seeking guidance about how to handle Plaintiff's performance issues. (UF ¶ 27.) She explained that Plaintiff continues to leave for lunch and break for the day without communicating with any manager on duty and that she has been pulled into the office many times and verbally counseled to do a status check-in upon arriving and leaving, to comply with direction while on the clock, and to keep her walkie-talkie on and respond accordingly. (*Id.*) Pickron explained that she informed Plaintiff of these issues in her recent written performance evaluation. Human Resource's guidance to Pickron was to give Plaintiff one last verbal warning and tell her the next incident would be a written counseling. (UF ¶ 28.) On November 9, 2015, Pickron reached out to Human Resources yet again, explaining Plaintiff had been demonstrating a "horrible attitude" and "refusal to complete work". (UF ¶ 29.) She explained that management was honoring her work restrictions, but that the shoe department was not in good shape, Plaintiff's shoe mismates were high, her replenishment was full, and her ESL report was through the roof. (*Id.*) Human Resources advised Pickron in part to "treat her just like anyone else," to "document well" and "make sure HR [is] a partner." (UF ¶ 30.)

## F. After Numerous Documented Performance Issues, Plaintiff Complained to Kohl's Integrity Hotline About Pickron

Following Pickron's efforts to document Plaintiff's performance issues (as she had been instructed by HR), Plaintiff made several hotline complaints about Pickron. First, on February 5, 2016, Plaintiff alleged that Pickron refused to approve her time off request even though she followed protocol and got coverage for a missed shift. (UF ¶ 31.) Second, on March 18, 2016, Plaintiff complained she felt belittled and that Pickron was "rude" while communicating about her work performance. (UF ¶ 36.) Plaintiff's final complaints occurred on May 6, 2016, when she alleged Pickron made her transfer freight which violated her work restrictions and that Pickron communicated with her unprofessionally over the walkie-talkie. (UF ¶ 38.)

Plaintiff testified that Pickron called her over the walkie-talkie and told her there were "u-boats" (which are carts used to move boxes) of freight that she needed to get. (*Id*.)  Plaintiff acknowledge that, as supervisor, she understood she could have delegated that task, and that there were times where other people from the unloading team would take the freight to the shoe department.  (UF ¶¶ 87.)  Although she testified she felt she would have gotten in trouble if she delegated that task, she admitted she had no factual basis for that belief.  (Pltf. Depo. 267:12-273:15.)  To the contrary, she admitted that she understood the instruction from management was that, as shoe department supervisor, she had to make sure the work gets done but that she didn't necessarily have to do it herself.  (UF ¶ 72.)  No one ever told her that she could not ask others for help with tasks outside her work restrictions or that she had to do those tasks herself. (UF ¶ 3.)

Upon receiving the May 6, 2016 complaints by Plaintiff, Human Resources informed Shelly York (District Manager) and Cindy Delatorre (Store Manager) and requested statements from Maureen Behar (witness to walkie-talkie incident) and Leslie Pickron, which were provided.   (UF ¶ 62.) Soon thereafter, HR followed up with Delatorre who confirmed that she addressed the situation with Pickron; she had verbally warned Pickron immediately after the incident.  (UF ¶ 63.) Plaintiff testified there were no further instances of her work restrictions allegedly being violated after she made the hotline complaint on May 6, 2016.  (UF ¶ 64.)  Plaintiff did not make any other hotline complaints and did not feel the need to do so.  (*Id*.)  HR promptly investigated each of Plaintiff's hotline complaints. (UF ¶ 61.)

### G. Plaintiff's Mismanagement of the Shoe Department Continued Throughout 2016, Causing Kohl's to Issue Progressive Counseling and Ultimately Terminate Plaintiff's Employment

Plaintiff continued to have the same types of performance problems in 2016.  On or about February 5, 2016, Pickron reached out to Human Resources to explain that



Plaintiff continued to ignore direction, did not execute game plans, blamed her team, and did not follow company standards. (UF ¶ 113.)  Pickron also highlighted several problem areas with the shoe department: replenishment, cleanliness, mismates, department condition, empty fixtures, and freight. (*Id.*)  On February 12, 2016, Pickron discussed and documented Plaintiff's performance problems with her. (UF ¶ 114.)  Plaintiff committed to the following: getting the kids department 100% completed in all areas of 5 basics and shoe operations; all men's and women's athletics to be sized, signed, and cleaned; no empty fixtures in the department and all dusted. (*Id.*)

On February 22, 2016, Pickron informed Human Resources about Plaintiff's lack of production, refusal to follow direction, refusal to communicate and respond, and negative attitude. (UF ¶ 115)  On March 15, 2016, Pickron and Maureen Behar (Area Supervisor) met with Plaintiff to discuss the condition of the shoe department. (UF ¶ 116.)  On March 23, 2016, Cindy Delatorre informed Human Resources that she walked with Plaintiff in the shoe department on March 22, 2016 to help her prioritize her workload. (UF ¶ 118.)  During the walk she observed that the area Plaintiff had been working in was a mess—there were stacks of shoes left in the middle of the aisle, there were shoes on benches where customers would sit, the aisles were blocked with whatever Plaintiff had been working on, ESLs were not on shoe displays, displays on top of shoe doghouses did not match what was underneath them, and there were paper signs with hand-written pricing instead of printed signs. (*Id.*)

On June 22, 2016, Delatorre issued Plaintiff a detailed initial written counseling, which identified her performance deficiencies, including specific examples and dates. (UF ¶ 121.)  Plaintiff admitted at deposition that the following conduct for which she was counseled in fact occurred: she did not comply with the "Yes We Can" policy to efficiently resolve customer questions when they needed help in areas other than shoes; she did not comply with the "2 in a line" policy and respond to calls to assist with backing up with the cash registers; the shoe department was dusty; she violated

company merchandise presentation standards by not replenishing merchandise on the sales floor when needed; she did not communicate merchandising and sales floor operational opportunities with management; she violated company standards by hand-writing signs on shoe displays; she violated stockroom organizational guidelines because there were loose shoes all over the stockroom and "the stockroom was a mess"; and she did not effectively use company communication tools to share information with others. (UF ¶ 122.) Plaintiff understood that further disciplinary action could result if her performance problems continued. (UF ¶ 123.)

On August 10, 2016, Mary Ann Baran (Assistant Store Manager) issued Plaintiff a 30-day follow up written counseling. (UF ¶ 124.) Plaintiff again admitted at deposition that the conduct for which she was counseled in fact occurred: she did not comply with the "2 in a line" policy and respond to calls to assist with backing up with the cash registers; she did not comply with the "5 basics" policy – she was "trying to get [the shoe department] under control, but . . . [she] wasn't able to . . ."; she violated company merchandise presentation standards by failing to replenish the sales floor with merchandise while there was adequate merchandise in the stockroom; she did not ensure merchandise presentation standards are met while merchandising incoming truck freight; she violated company standards by hand-writing information on signs for the shoe displays; she violated stockroom organizational guidelines because there were loose shoes and unmarked product all over the stockroom; and she violated mismate best practice by continuing to have more than 30 mismates weekly where less than 20 was acceptable. (UF ¶ 125.) Plaintiff understood that further disciplinary action could result if her performance problems continued. (UF ¶ 126.)

On September 23, 2016, Delatorre issued Plaintiff a 60-day follow up written counseling. (UF ¶ 127.) Yet again, Plaintiff admitted at deposition that the conduct for which she was counseled in fact occurred: she did not comply with the "2 in a line" policy and respond to calls to assist with backing up with the cash registers; she did not

CALL &
JENSEN

comply with the "5 basics" policy and admitted "the shoe department was struggling"; she violated company merchandise presentation standards by failing to replenish the sales floor with merchandise while there was adequate merchandise in the stockroom; she violated merchandise presentation standards by failing to update signs on shoes; she violated stockroom organizational guidelines because there were loose and unmarked shoes all over the stockroom; she violated merchandise presentation standards by failing to ensure shoes on tops of doghouses had ESLs and were organized properly; and she violated mismate best practice by continuing to have a lot of mismates in the stockroom. (UF ¶ 128.) Plaintiff understood that further disciplinary action including termination could result if her performance problems continued. (UF ¶ 129.)

After consulting with Human Resources, Delatorre issued the final counseling and termination to Plaintiff on November 18, 2016. (UF ¶ 130.) Once again, Plaintiff admitted at deposition that the conduct for which she was counseled and terminated in fact occurred: she admitted "the shoe department was out of control" since the time the last counseling took place; she did not comply with the "Yes We Can" policy to efficiently resolve customer questions when they needed help in areas other than shoes; she did not comply with the "2 in a line" policy and respond to calls to assist with backing up with the cash registers; she did not comply with the "5 basics" policy and admitted that "the wrong shoes in the wrong box, that was happening . . ."; she violated company merchandise presentation standards by failing to replenish the sales floor with merchandise while there was adequate merchandise in the stockroom; she violated merchandise presentation standards by failing to update signs on shoes; she violated stockroom organizational guidelines because there were loose shoes all over the stockroom; she violated stockroom organizational guidelines because the shoe back stock was not properly scanned in and the team was not properly putting shoes away and bringing shoes out; she violated mismate best practice by continuing to have more than 30 mismates weekly and by zip tying shoes against company protocol; and she

CALL &
JENSEN

engaged in insubordination by not performing assigned duties such as price changes, sales floor and fitting room recovery outside of immediate department area, housekeeping duties, auditing sales floor and stock areas for safety hazards, preparation and taking of inventory, and stockroom organization.  (UF ¶ 131.)  Plaintiff understood that she was being terminated due to the ongoing performance issues as documented.  (UF ¶ 132.)[5]

### H. Plaintiff's DFEH and Civil Complaint

Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") on August 16, 2017, and obtained a right-to-sue letter the same day.  (UF ¶ 67.)  Plaintiff filed her civil Complaint on August 24, 2017 in San Bernardino Superior Court.  (UF ¶ 68.)  Kohl's timely removed the case to federal court.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine dispute as to material facts and the moving party is entitled to judgment on a particular claim as a matter of law.  Fed. R. Civ. P. ("FRCP") 56(b), (c), *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The moving party can demonstrate the absence of a genuine issue of material fact by presenting evidence that negates an essential element of the non-moving party's case, or show that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  *Celotex,* 477 U.S. at 322-23.  After the moving party shows no genuine issues of material fact exist, the burden then shifts to the party opposing the motion to designate "specific facts" to demonstrate the existence of a genuine issue for trial.  FRCP 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  A dispute over an issue of material fact is not considered to create a genuine issue unless the plaintiff can offer

---

[5] Although Plaintiff testified she felt like she did not have the support she needed for the shoe department, when pressed at deposition she admitted that all she meant was that she just wanted additional labor to generally help with her workload.  (UF ¶ 133.)

concrete evidence such that a reasonable jury could return a verdict in the plaintiff's favor. *Id.* If the non-moving party fails to meet its burden, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## IV. <u>LEGAL ARGUMENT</u>

**A. Plaintiff's First, Second, Third and Eighth Causes of Action Fail as a Matter of Law Because She Cannot Offer Any Evidence That Her Termination Was Linked to Her Disability, Her Complaints, and/or her Requests for Accommodation[6]**

Absent direct evidence of discriminatory intent, the plaintiff has the initial burden of showing with credible evidence that she was terminated *because of* her protected status. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973). Thus, in a discrimination or retaliation case, a plaintiff must establish that an illegitimate criterion was a substantial motivating reason for the employer's decision. *See Alamillo v. BNSF Railway Company*, 869 F.3d 916, 920 (9th Cir. 2017); *see also Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013). Here, Plaintiff cannot meet her prima facie burden on either her first, second, third, or eighth causes of action and for that reason alone summary adjudication of those claims is appropriate.

1. <u>Plaintiff cannot establish a prima facie case to support her first cause of action for disability discrimination.</u>

To establish a prima facie case of disability discrimination, Plaintiff must show that she (1) was disabled or regarded as disabled; (2) could perform the essential duties of the job with or without an accommodation, and (3) was subjected to an adverse employment action *because* of her disability or perceived disability. *Wills v. Superior*

---

[6]A cause of action for wrongful termination in violation of public policy fails if a court determines there was no violation of a statutory or constitutional provision on which the cause is based. *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999). Since Plaintiff's claim for wrongful termination is based on the same alleged facts as her First, Second, Third, and Eighth causes of action, her wrongful termination claim is derivative and fails for the same reasons as explained in this section.

CALL&
JENSEN

*Court,* 195 Cal. App. 4th 143, 159-160 (2011); *Guz v. Bechtel Nat'l, Inc.,* 24 Cal. 4th 317, 355 (2000); *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 805-07 (1999).

Here, Plaintiff has no evidence that her disability was a contributing factor, let alone a ***substantial motivating factor***, for the decision to counsel her or terminate her employment.   To the contrary, Plaintiff acknowledged that her employment was terminated because of her ongoing performance issues.   (UF ¶ 50.)   Plaintiff's performance issues were documented *before* and *after* her alleged workplace injury in the fall of 2014.  (UF ¶¶ 2, 16, 17, 19, 23, 25, 27, 29, 32-35, 39, 42, 45, 48.)  Prior to the injury, Plaintiff had multiple performance counselings, issued by various supervisors. (UF ¶¶ 2, 17, 19.)  Also before the injury, in August 2014, Leslie Pickron—***the very person she claims had it out for her due to her disability and complaints***—gave her a negative review that highlighted many of the same performance problems that ultimately led to the termination of Plaintiff's performance.  (UF ¶ 19.)  The fact that Plaintiff's performance issues were documented *prior* to her injury completely refutes any causal connection.

Moreover, the termination of Plaintiff's employment occurred almost two years after her injury.   The passage of nearly two years refutes any inference of discrimination.  *See Vollmar v. Int'l Bus. Machines Corp.,* 2012 WL 3731512, *8 (N.D. Cal. Aug. 28, 2012) (rejecting five month interval as insufficient to show causal connection).   Thus, there is no credible inference of discrimination based on temporal proximity between her injury, need for accommodation and her performance counselings or termination.  Furthermore, Plaintiff admitted she got positive praise from the alleged discriminators—Leslie Pickron and Cindy Delatorre—after the injury and request for accommodation, which refutes any notion there was "ill will" stemming from Plaintiff's alleged workplace injury.  (UF ¶ 22); *Smith v. Harrington,* 2015 WL 1407292, * 25 (N.D. Cal. Mar. 27, 2015) (traditional tort law determines whether

intervening causes break the chain of proximate causation). Lastly, Plaintiff even admitted at deposition that the shoe department's struggles began in approximately 2013, when her overtime was cut by Pickron's predecessor (UF ¶ 18), and continued after alleged injury (UF ¶¶ 25, 26, 40, 43, 46, 49). *See Phillips v. Victor Comm. Servs., Inc.,* 629 Fed. Appx. 920, 922 (9th Cir. 2017) (plaintiff's violation of company policy creates intervening cause disrupting inference of causal link). Therefore, Plaintiff cannot establish a *prima facie* case for her first cause of action.

2. <u>Plaintiff cannot establish a prima facie case for her second and third causes of action for retaliation and eighth cause of action for whistleblowing under Labor Code section 1102.</u>

To establish a *prima facie* case of unlawful retaliation, a plaintiff must show (a) she engaged in a protected activity; (b) she was thereafter subjected to an adverse employment action by the employer; and (c) there was a causal link between the protected activity and the adverse action. *Morgan v. Regents of Univ. of Cal.,* 88 Cal. App. 4th 52, 69 (2000); *Guthrey v. State of Cal.,* 63 Cal. App. 4th 1108, 1125 (1998). The causation element for retaliation claims under Government Code section 12940(h) also require that Plaintiff prove "that the discrimination was **a substantial motiving factor,** rather than simply a motivating factor . . ." *Harris v. City of Santa Monica,* 56 Cal. 4th 203, 231-232 (2013) (emphasis added); 2 C.C.R. 11009(c).

Here, Plaintiff cannot establish a causal link between her May 6, 2016 complaint that her work restrictions were being violated[7] and her subsequent progressive counselings and termination. It is not enough to show merely that a termination (or other adverse consequence) followed a protected activity. *Chen v. County of Orange,*

---

[7] Of Plaintiff's multiple calls to Kohl's integrity hotline in 2016, only her complaints on May 6, 2016 that Pickron was allegedly violating her work restrictions count as a "protected activity" under Government Code section 12940(h) since such complaints oppose an alleged employment practice made unlawful by the FEHA, whereas the others do not. By the same token, only the May 6, 2016 complaints constitute protected activity under Labor Code section 1102.5. *See* element 3 of the Judicial Council of California Civil Jury Instruction 2730.

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

96 Cal. App. 4th 926, 931 (2002) ("Mere sequence is not enough – that would be the classic logical fallacy of 'post hoc ergo propter hoc' (after the fact, therefore because of the fact).").  Here, there is nothing at all linking Plaintiff's protected activity to her termination or any adverse performance action.   To the contrary, Plaintiff's performance counselings and termination are directly linked to performance deficiencies which she, in fact, concedes existed.  Moreover, there is evidence that Plaintiff was counseled for similar performance deficiencies *prior* to any protected activity and that the progressive counselings and termination followed only when Plaintiff failed to improve.  (*See e.g.* performance evaluations and documentation on June 30, 2015 (UF ¶ 23); August 7, 2015 (UF ¶ 25);  August 12, 2015 (UF ¶ 27); November 9, 2015 (UF ¶ 29); February 5, 2016 (UF ¶ 32); February 12, 2016 (UF ¶ 33); February 22, 2016 (UF ¶ 34);  March 15, 2016 (UF ¶ 35); March 23, 2016 (*Id.* at UF ¶ 37).  As can be seen from the flurry of earlier documented performance issues, Plaintiff cannot present evidence that her May 6, 2016 complaint was the reason for her progressive counselings and termination.

Plaintiff's third cause of action – retaliation for seeking a reasonable accommodation – fails for similar reasons.  Her request for accommodation occurred in May 2015, however, there were performance issues documented prior to that date and there is no evidence to suggest that the progressive counselings or termination of her employment – a year and a half later – were linked to this request.

## B. Plaintiff's First, Second, Third and Eighth Causes of Action Fail Because Kohl's Had a Legitimate Non-discriminatory Reason for the Adverse Employment Actions

Even if Plaintiff could establish her *prima facie* burden, Kohl's terminated her employment for legitimate, nondiscriminatory reasons.  The Ninth Circuit follows the *McDonnell Douglas Corp. v. Green* burden shifting test for Plaintiff's FEHA and Labor Code 1102.5 causes of action.  *McKenzie v. San Joaquin Valley College, Inc.,* 2017 WL

2129685, *5, 13 (2017).  If and only if Plaintiff meets her burden of proving a prima facie case does the burden shift to Kohl's.  Kohl's burden is not onerous. Where an employer moves for summary judgment, it meets its burden "if it presents evidence of such a nondiscriminatory reason that would permit a trier of fact to find, more likely than not, that they were the basis for the termination." *Scotch v. Art Inst. of Cal.,* 173 Cal. App. 4th 986, 1005 (2009).  Even if the reason is foolish, trivial, or baseless, so long as it is honestly believed and non-discriminatory on its face, Kohl's meets its burden. *Guz, supra,* 24 Cal. 4th at 358.  Once the employer offers a non-discriminatory reason for its employment decision, the presumption of unlawful discrimination disappears.   To defeat summary judgment, plaintiff must produce substantial, responsive evidence that the employer's reason was untrue or pretextual.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-143 (2000); *McDonnell Douglas*, *supra,* 411 U.S. at 804-806.

Plaintiff's own testimony as well as the extensive documentation of her performance problems reveal that the shoe department at the Kohl's South Corona store was a struggling mess under her supervision.  (UF ¶¶ 19-20, 23-50.)  Plaintiff admitted at deposition that the conduct for which she was disciplined and terminated in fact occurred.  (UF ¶¶ 40, 43, 46, 49.)  She also admitted that she was ultimately responsible for her shoe team and the department.  (UF ¶ 5.)  Whatever excuses Plaintiff may have for her shortcomings, such as blaming customers and her subordinates, Kohl's decision to issue progressive counseling and ultimately terminate Plaintiff's employment had everything to do with the numerous objectively-observed problems in the shoe department, and nothing to do with her alleged disability, requests for accommodation, or complaints.  (UF ¶¶ 19-20, 23-50.)  The evidence is clear that Kohl's gave Plaintiff multiple chances to improve her performance and she did not.  Consequently, Kohl's reasons for terminating Plaintiff's employment were legitimate and non-discriminatory.

In the face of Kohl's non-discriminatory reasons for its actions, Plaintiff must offer specific and substantial evidence that the articulated reasons are merely a pretext for discrimination.  To carry her burden Plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993) (emphasis in original).  As the court noted in *Hersant v. Department of Social Services*, an employee must offer "**substantial evidence**" of pretext to avoid summary judgment.  57 Cal. App. 4th 997, 1004-05 (1997) (emphasis added).  In meeting this burden, "speculation cannot be regarded as substantial responsive evidence." *Hanson v. Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 225 (1999).  Nor can a plaintiff's "personal beliefs or concerns." *McRae v. Dep't of Corrections & Rehab.*, 142 Cal. App. 4th 377, 396 (2006).

As explained above, Plaintiff admitted at deposition that the conduct for which she was disciplined and terminated in fact occurred, therefore, she cannot prove, as she must to show pretext, that the reasons for her termination were false.  (UF ¶¶ 40, 43, 46, 49.)  Moreover, to the extent Plaintiff claims Pickron and Delatorre were motivated by discrimination and were setting her up to fail, Plaintiff has no evidence, much less substantial evidence, to support such a wild contention.  When repeatedly pressed at deposition why she felt she was set up to fail, she conceded she had no factual basis for her belief.  (UF ¶ 51.)  Plaintiff thus cannot meet her burden of establishing pretext.

## C. Plaintiff's Fourth Cause of Action for Failure to Prevent Discrimination and Retaliation Fails as a Matter of Law

In order to establish a "failure to prevent" FEHA claim, a party must first be able to establish an underlying violation of FEHA as such a claim is not a stand-alone tort. *See Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 880 (2010).  As detailed above, Plaintiff cannot do so.  Therefore, this claim fails for that reason alone.

Moreover, a failure to prevent claim cannot stand where a company takes all reasonable steps to prevent the alleged wrongful conduct. *Ortiz v. Georgia Pacific*, 973

F. Supp. 2d 1162, 1884-85 (E.D. Cal. Sept. 23, 2013) (granting defendant's motion for summary judgment as to Plaintiff's FEHA failure to prevent claim where company promptly investigated each of Plaintiff's harassment complaints.)   Here, Kohl's communicated its anti-discrimination and anti-retaliation policies to company employees in many ways.   Kohl's company handbook contains information about Kohl's open door policy, a phone number to call the integrity hotline (which Plaintiff used multiple times), Equal Employment Opportunity Policy, Americans with Disabilities Policy, and No Retaliation Policy. (UF ¶ 53.)  Plaintiff understood that the handbook and company policies applied to her, including Kohl's whistleblower protection policy. (UF ¶¶ 52, 54.)  Plaintiff's supervisors during the relevant time period—Leslie Pickron (Operations Manager) and Cindy Delatorre (Store Manager)—both received ethics training, which includes training on anti-discrimination and anti-retaliation. (UF ¶ 56.)  Further, each of Plaintiff's hotline complaints about Pickron were promptly investigated and handled by Human Resources. (UF ¶¶ 57-64.)  Lastly, Plaintiff admits that after her May 6, 2016 complaint about being asked to violate her work restrictions the situation was immediately remedied and she experienced no further instance of her work restrictions allegedly being violated. (UF ¶ 64.)  Notably, Plaintiff never once complained that she was being discriminated against because of her disability or that she was retaliated against for engaging in any type of protected activity. (UF ¶¶ 57-64.)  For all of these reasons, Plaintiff cannot establish that Kohl's failed to take all reasonable steps to prevent discrimination or retaliation.

### D. Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law

Plaintiff's fifth cause of action alleges that Kohl's failed to reasonably accommodate her disability in violation of FEHA.  In order to prevail on a failure to accommodate claim, Plaintiff must establish that she suffers from a disability covered by FEHA and that she was denied a reasonable accommodation that would permit her to perform the essential functions of her job. *Jensen v. Wells Fargo Bank,* 85 Cal. App.

CALL &
JENSEN

4th 245, 256 (2000).   And before pursuing any FEHA claim, including a failure to accommodate claim, a plaintiff must file a timely and sufficient administrative complaint with the DFEH and receive a "right-to-sue" notice.   Cal. Gov. Code §§ 12960, 12965(b).  The DFEH complaint must be filed within one year of the date the alleged unlawful practice occurred.  *Id.* at 12960(d); *Thompson, supra,* 186 Cal. app. 4th at 879.   Therefore, the one-year period for failure to accommodate claims is measured from the date the alleged failure to accommodate occurred.

Plaintiff's failure to accommodate claim fails for two reasons.  First, Plaintiff cannot establish that she timely exhausted her administrative remedies as required by California Government Code section 12960 prior to bringing her claim.   Plaintiff testified that after May 6, 2016, she did not experience any further alleged failure to accommodate.  (UF ¶ 64.)   Therefore, she was required to exhaust her administrative remedies on this claim by May 6, 2017, but she failed to do so—it wasn't until August 16, 2017 (three months too late) that she filed a charge with the DFEH and obtained a right-to-sue letter.  (UF ¶ 67.)   Second, Kohl's sufficiently accommodated Plaintiff's work restrictions—as described in section II.C above.  Plaintiff was able to delegate all tasks she could not perform due to her restrictions (and often did).   (UF ¶¶ 74-79.) FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks—it only requires only that the accommodation chosen be "reasonable".  *Raine v. City of Burbank,* 135 Cal. App. 4th 1215, 1222 (2006).   The fact that Plaintiff could delegate any tasks she could not perform is more than reasonable; Defendant is not obligated to do everything Plaintiff desired, like rearrange her workload and let her to turn off her walkie-talkie.  (UF ¶ 51.)

### E. Plaintiff's Fifth Cause of Action for Failure to Engage in the Interactive Process Fails a Matter of Law

"The obligation to engage in such an interaction process 'is triggered by an employee or an employee's representative giving notice of the employee's disability

and the desire for accommodation.'" *Wilson v. Sunsweet Grocers, Inc.,* 2007 WL 2418736, *4 n.5 (E.D. Cal. Aug. 24, 2007). "It is an employee's responsibility to understand his or her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee." *Jensen, supra,* 85 Cal. App. 4th at 266. Here, Plaintiff provided her doctor's notes with restrictions to Kohl's management, who accepted them, and as described in section II.C. above, she was able to delegate all tasks she could not perform due to her restrictions (and often did). (UF ¶¶ 74-79.) Kohl's had two separate meetings with Plaintiff to discuss her job responsibilities and her work restrictions. (UF ¶ 80.) Plaintiff never indicated there was a need for any further discussions or requested an accommodation that Kohl's rejected. (UF ¶ 81.) Thus, Kohl's more than satisfied its duty to engage in the interactive process with Plaintiff.[8]

### F. Plaintiff's Meal Period Claim Fails as a Matter of Law

In order to establish a claim, Plaintiff must prove she was denied sufficient and timely meal periods during the relevant statutory period of three years prior to the filing of her Complaint. *Murphy v. Kenneth Cole Productions, Inc.,* 40 Cal. 4th 1094, 1102-03 (2012).[9] An employer "is not obligated to police meal breaks" or to ensure no work is performed, and mere proof that an employer was aware an employee worked through a meal period is not enough to establish liability. *See Brinker Restaurant Corp. v. Superior Court,* 53 Cal. 4th 1004, 1040-1041 (2012). An employer meets its obligation to provide meal periods as long as it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040.

---

[8] To the extent Plaintiff tries to base this cause of action on her allegation that she had to perform work outside her work restrictions, her claim fails because it is time barred as set forth in section IV.D. and because she acknowledged that she had the ability to delegate any tasks that may exceed her work restrictions. (UF ¶¶ 65-81.)
[9] The relevant statutory period for this claim is August 24, 2014 to November 18, 2016.

DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Here, Kohl's had a lawful and compliant meal period policy.  (UF ¶¶ 136-137.)  Plaintiff testified that she was aware of the policy, that she understood she was expected to comply with it and that she, herself, was tasked with enforcing the policy as a supervisor.  (*Id.*)  In particular, she understood that management expected her to start her meal period between 4 and 4 ½ hours after the start of her shift to ensure her meal period was taken before the end of the fifth hour of work.  (*Id.*)  Consistent with policy, in 2013, Plaintiff was counseled at least two times by management about her failure to comply with the company's meal period policy because she would wait until the last minute to take lunch, which impacted customers because she would have to void transactions if she was in the middle of one at the same time when she had to break for lunch.  (UF ¶ 138.)  Further, Kohl's has a policy of providing meal period premiums to California non-exempt employees who are not provided adequate meal breaks.  (UF ¶ 141.)  Kohl's also asked employees to indicate whether they received a compliant meal period for each shift they worked through their time keeping system.  (*Id.*)  Plaintiff never indicated that she did not receive a compliant meal period.  (*Id.*)  Further, Kohl's has paid meal period premiums to Plaintiff, when a meal period was not provided (outside the statutory time period).  (UF ¶ 142.)

Plaintiff's testimony does not come close to establishing an actionable claim for missed meal periods.  In addition to the above, Plaintiff cannot recall any of the circumstances under which she missed a meal period, including when or even how many times she purportedly missed one.  (UF ¶ 139.)  Therefore, she cannot bear the burden of showing that any of the allegedly inadequate breaks occurred during the statutory time period.  Plaintiff never reported to management or Human Resources during the relevant time period that she was prevented from taking a meal break on any particular occasion.  (UF ¶ 140.)  Accordingly, Plaintiff cannot meet her burden of proof on this claim and summary judgment is appropriate.

### G. All of Plaintiff's Claims (Except the Meal Break Claim) Are Barred Under the Workers' Compensation Act Because All of the Alleged Conduct Occurred in the Course and Scope of Plaintiff's Employment

The Workers' Compensation Act ("WCA") is the exclusive remedy for physical or mental injuries arising from the course and scope of employment.  Labor Code § 3600; *see e.g., Shoemaker v. Myers*, 52 Cal. 3d 1, 7, 16 (1990) ("we conclude that disabling injuries, whether physical or mental, arising from termination of employment are generally within the coverage of workers' compensation and subject to the exclusive remedy provisions . . . .")  Here, the undisputed evidence shows that the circumstances leading to Plaintiff's disciplinary counselings and termination amount to nothing more than "a normal part of the employment relationship."  UF ¶¶ 82-135, *see e.g., Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 814-815 (2001) (emotional distress caused by employer's abusive conduct or termination held subject to exclusive remedy of Workers' Compensation); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 159 (1987) ("when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the WCA."). Dismissal from employment is a normal risk inherent in an employment relationship.  *Pichon v. Pacific Gas & Electric Co.*, 212 Cal. App. 3d 488, 496 (1989).  As a result, all of Plaintiff's causes of action (except the meal break claim) should be dismissed because they are barred by WCA exclusivity.

### H. Plaintiff's Punitive Damages Claim Fails as a Matter of Law

In order to recover punitive damages, Plaintiff must present clear and convincing evidence that a managing agent of a corporate defendant authorized or ratified an act of malice, oppression, or fraud.  *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal. App. 4th 1017, 1046-54 (2002) (affirming summary adjudication on



DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

punitive damages; cannot meet "stringent" evidentiary standard); *College Hosp., Inc. v. Superior Court*, 8 Cal. 4th 704, 712-13 (1994); Cal. Civ. Code § 3294.  Here, neither Delatorre, who made the termination decision, nor Pickron, who provided information leading to Plaintiff's termination, has the ability to determine Kohl's corporate policy. (UF ¶ 143-146.)  Instead, they are merely responsible for applying policy set by others to the store where they work.  (*Id.*); *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999) ("[T]he Legislature intended the term 'managing agent' to include only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy.").  Further, there is no evidence that anyone at Kohl's committed conduct that rises to the "level of despicability" shown in cases where punitive damages are awarded.  (UF ¶¶ 1-51.)  *American Airlines*, 96 Cal. App. 4th at 1051.  Thus, Plaintiff's claim for punitive damages fails even if any other claim survives.

## V.   **CONCLUSION**

Because there are no triable issues of material facts on any of Plaintiff's nine causes of action, Kohl's respectfully requests the Court to grant summary judgment or, in the alternative, partial summary judgment of the claims or issues identified herein.

Dated:  June 18, 2018                    CALL & JENSEN
                                         A Professional Corporation
                                         Julie R. Trotter
                                         Shirin Forootan


                                         By: */s/ Julie R. Trotter*
                                              Julie R. Trotter

                                         Attorneys  for  Defendant  Kohl's  Department Stores, Inc.